Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000192
30-NOV-2018
09:59 AM

NO. CAAP-16-0000192

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MARK N. BEGLEY, Plaintiff-Appellant/Cross-Appellee, v. COUNTY OF KAUA'I; DEPARTMENT OF PERSONNEL SERVICES, COUNTY OF KAUA'I; THOMAS T. TAKATSUKI, individually, and in his official capacity as Acting Director of Personnel Services; DEPARTMENT OF HUMAN RESOURCES, COUNTY OF KAUA'I; JANINE M.Z. RAPOZO, individually, and in her official capacity as Director of Human Resources, and DOES 1-50, Defendants-Appellees/Cross-Appellants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 15-1-0085)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

I.

Plaintiff-Appellant/Cross-Appellee Mark N. Begley (Begley), appeals from the February 18, 2016 Final Judgment Against Plaintiff (Final Judgment) entered by the Circuit Court of the Fifth Circuit[1] (Circuit Court).

Defendant-Appellee/Cross-Appellant County of Kaua'i; Department of Human Resources, County of Kaua'i; Thomas T. Takatsuki, Acting Director of Personnel Services, County of Kaua'i; and Janine Rapozo, Director of Human Resources, County of Kaua'i in their individual and official capacities, (collectively, County) cross-appeal from the Final Judgment.

---

[1] The Honorable Randal G.B. Valenciano presided.

II.

### A. Factual Background

Begley is employed by the Kaua'i Police Department (KPD) as Assistant Chief.[2] After he reported improper workplace conduct, he experienced retaliation at his workplace, which caused him mental stress. Begley's workers' compensation claim for mental stress was accepted by the County without contest.[3]

During the course of Begley's treatment and medical leave, a dispute arose regarding whether certain conditions Begley's treating psychiatrist placed on his return to work were permanent or temporary. Based on her response, the County took the position that Begley was permanently unable to return to his previous position at the KPD and informed Begley that it wanted him to participate in the County's Return to Work Program (RTWP).

The policy of the RTWP is "to encourage injured workers to return to work following a job-related injury or illness as soon as authorized by a health care provider." To this end, "[e]mployees who are injured due to a work related injury or illness may be provided temporary light duty job assignments and shall be provided a priority of placement in other jobs when they are unable to permanently return to their usual and customary work. "Priority Placement" is defined in the RTWP as "a job placement process for those employees who are medically determined to be unable to permanently return to perform their essential functions of their job because of a work related injury or illness."

The RTWP also cites a number of provisions within the "Workers' Compensation Law," Hawai'i Revised Statutes (HRS) Chapter 386, including HRS § 386-142, pertaining to the employment rights of injured employees. The RTWP provides for

---

[2]     In his Complaint, Begley alleged that he held the position of Police Inspector, but had been informed this position had been changed to Assistant Chief. The County refers to Begley as the Assistant Chief.

[3]     Begley also filed discrimination charges with the Equal Employment Opportunity Commission (EEOC). The EEOC found that there was reasonable cause to believe that Begley was subjected to retaliation for engaging in a protected activity. As of the filing of the Complaint in the instant case, the EEOC's conciliation efforts proved unsuccessful and the matter remained under review by the United States Department of Justice.

participation by employees with permanent work restrictions where "[t]he employee has been released by an appropriate physician to return to alternate work and the physician has determined that the employee is permanently unable to perform any/all of the essential functions of the employee's regular pre-injury position." The placement procedure section also outlines the "Departmental Meeting" and "Notification" that is required for placement of employees with permanent work restrictions.

The RTWP specifies when termination of a county employee disabled by a work injury is appropriate. This includes when the employee fails to attend the required departmental meeting, does not timely notify the departmental personnel representative of his decision to participate in priority placement, refuses an offer of employment, refuses or fails to attend a scheduled job placement meeting, fails to report for work for the assigned position, cannot be placed within the county by the end of their eligibility period in the priority placement procedure, or the County is unable to place the employee in another position.

Begley initially refused to participate in RTWP meetings, but on February 19, 2015, Begley, Begley's counsel, and a Human Resources specialist from the County's Department of Human Resources, met to discuss Begley's employment with the County under the RTWP. Begley was required by the County to inform them of his decision to participate in the RTWP but he failed to do so. On February 2, 2016, apparently because he did not inform them of his decision, Begley was sent a termination notice, but the termination notice was subsequently retracted. As of October 6, 2016, Begley remained on leave and continued to receive treatment; he had yet to participate any further in the RTWP.

## B. Procedural Background

Begley claims he is being "forced" into the RTWP. As a result, he filed his June 16, 2015 Complaint (Complaint) in Circuit Court, in which he alleged and requested the following:

3

Count I:        Preliminary[4] and permanent "Injunctive Relief" "preventing [the County] from forcing [Begley] into the RTWP and/or taking action to terminate [Begley's] employment."[5]

Count II:       "Declaratory Relief" declaring that:

                (1)    Begley is not "permanently disabled;"

                (2)    The County's acts of forcing Begley into the RTWP is unsupported and improper;[6]

                (3)    "Plaintiff is fully capable of returning to his usual and customary work, provided that Defendants ensure a safe working environment for Plaintiff;"

                (4)    "the RTWP was unconstitutionally adopted;"[7]

---

[4]    On June 22, 2015, Begley also moved for a preliminary injunction. The Motion requested that Begley be granted an injunction:

    (1)    prohibiting the County from forcing Begley to decide whether to participate in the RTWP;

    (2)    prohibiting the County from taking any action or further action in terminating Begley's employment; and

    (3)    preserving the status quo pending resolution of Begley's claims asserted in the action.

On October 23, 2015, the Circuit Court granted the injunction.

[5]    Begley views

the RTWP as a mechanism to prematurely terminate him. Specifically, [Begley] believes [the County] will seek to terminate him if he does not participate in a "Priority Placement" assignment of the RTWP. Alternatively, [Begley] believes his participation in a "Priority Placement" assignment of the RTWP will lead to a job placement that does not preserve his retirement and other benefits specific to his status as a police officer and/or his eventual termination.

[6]    Begley argued that the County is using the RTWP as leverage to force his termination and/or is an effort to settle his retaliation claims.

[7]    Begley argues that "County employees, such as [Begley], had no notice of the adoption of the RTWP and its application to them." Furthermore,

[t]he RTWP is neither codified in the Hawaii Revised Statutes nor the [Kaua'i] County Code. Rather, it appears

(continued...)

(5) the RTWP is unconstitutional because it does not provide for adequate due process;[8] and

(6) Begley's due process and equal protection rights were violated when the County forced him into the RTWP and failed to reconsider its decision.[9]

Count III: Damages and injunctive relief for "Violation of 42 U.S.C. § 1983."[10]

Count IV: Damages for "Intentional Infliction of Emotional Distress" for willfully and/or wantonly deciding to force Begley into the RTWP.

Count V: Damages for "Aiding and Abetting" for, with knowledge of improper and illegal conduct taken against Begley, helping, and/or encouraging such conduct.

Count VI: Damages for "Civil Conspiracy" for agreeing, approving and/or otherwise engaging in unlawful activities to achieve a common goal.

Count VII: Damages for "Concert of Action" for engaging in tortious and/or wrongful activity pursuant to a common design.

---

[7](...continued)
to be a "policy" adopted by the [County]. . . . Moreover, [Begley] was never given notice about the RTWP - it was never a term of [Begley's] employment and he was never issued a copy or asked to acknowledge receipt of the RTWP. Finally the RTWP is not (and has never been)a part of the State of [Hawaiʻi] Organization of Police Officers ("SHOPO") contract, of which [Begley] is a member[.]

[8] Begley argues that "the RTWP does not allow County employees, such as [Begley], to challenge disability classifications made by the County, even though these classifications form the basis of the County's decision to terminate its employees, such as [Begley]."

[9] Begley argues that he "has not been given the opportunity to contest his unilateral classification as an employee eligible for 'Priority Placement' assignment of the RTWP, nor appeal that classification." He argues that this is true "even though these classifications form the basis of the County's decision to terminate its employees, such as [Begley]." Furthermore, "the RTWP, as properly applied to [Begley], would result in his termination and loss of his vested retirement benefits without giving [Begley] the opportunity to challenge his classification of being 'permanently disabled' . . . . In short, the RTWP provides no remedy for [Begley] to correct his (and Dr. Gerard's) mis-classification."

[10] This Count was voluntarily dismissed and is not at issue in this appeal.

5

"[County's] Motion to Dismiss Complaint filed on June 16, 2015" (Motion to Dismiss) was filed on September 21, 2015. At the hearing on the Motion to Dismiss, County argued that the claims for injunctive and declaratory relief "are outside of this Court's jurisdiction because of the exhaustion doctrine[,]" and that while the Circuit Court has jurisdiction over the tort claims, the doctrine of primary jurisdiction required that the Circuit Court "defer any decisions on those tort claims . . . pending proper agency determination[.]" The Circuit Court granted the Motion to Dismiss as to all counts based on the doctrine of primary jurisdiction. On February 18, 2016, the Circuit Court entered the Final Judgment, from which both Begley and the County timely appeal.[11]

### III.

### DISCUSSION

A. **The Department of Labor and Industrial Relations has exclusive original jurisdiction in this case; thus, Counts I and II of the Complaint should have been dismissed based upon the doctrine of exhaustion.**

The Circuit Court dismissed all claims in Begley's Complaint, concluding that it should defer to the Director of the Department of Labor and Industrial Relations of the State of Hawaiʻi (Director & DLIR), which has "specialized knowledge regarding these types of matters," based on the primary jurisdiction doctrine. The County asserts that the Director has exclusive original jurisdiction, not primary jurisdiction, over Counts I and II, but agrees that the Director has primary jurisdiction over the remaining counts in the Complaint. Begley asserts that the Circuit Court has exclusive original jurisdiction as to all claims in the Complaint. "The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." Lingle v. Hawaii Gov't Emps. Ass'n, 107 Hawaiʻi 178, 182, 111 P.3d 587, 591 (2005) (citation omitted).

---

[11] During the hearing on the Motion to Dismiss, Begley also moved to continue the October 23, 2015 injunction during the anticipated appeal. The Circuit Court also granted this motion.

> "Courts have developed two principal doctrines to enable the question of timing of requests for judicial intervention in the administrative process to be answered: (1) primary jurisdiction; and (2) exhaustion of administrative remedies." . . . "These principles are doctrines of comity designed to outline the relationship between courts and administrative agencies and secure their proper spheres of authority."

Kellberg v. Yuen, 131 Hawai'i 513, 527, 319 P.3d 432, 446 (2014) (quoting Kona Old Hawaiian Trails Grp. v. Lyman, 69 Haw. 81, 92-93, 734 P.2d 161, 168 (1987); and then quoting Leone v. Cnty. of Maui, 128 Hawai'i 183, 192, 284 P.3d 956, 965 (App. 2012)).

> The doctrine of exhaustion of administrative remedies provides that "where a claim is cognizable in the first instance by an administrative agency alone," "[j]udicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process." . . . "As such, the doctrine of exhaustion of remedies temporarily divests a court of jurisdiction."

Id. (quoting Kona Old Hawaiian Trails Grp., 69 Haw. at 93, 734 P.2d at 168; and then quoting Williams v. Aona, 121 Hawai'i 1, 9, 210 P.3d 501, 509 (2009)).

> In contrast, the doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." . . . "When this happens, the judicial process is suspended pending referral of such issues to the administrative body for its views," and the courts are effectively "divested of whatever original jurisdiction they would otherwise possess."

Id. (citations omitted) (quoting Kona Old, 69 Haw. at 93, 734 P.2d at 168-69). The United States Court of Appeals for the Fifth Circuit phrases the criteria for the application of this doctrine as follows:

> (1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body.

Jou v. Nat'l Interstate Ins. Co. of Hawaii, 114 Hawai'i 122, 128, 157 P.3d 561, 567 (App. 2007) (quoting Northwinds Abatement, Inc. v. Empl'rs Ins. of Wausau, 69 F.3d 1304, 1311 (5th Cir. 1995)).

In applying these doctrines, the court "must first determine whether the agency has exclusive original jurisdiction,

in which case, the doctrine of exhaustion would apply. If not, and the court finds that it does possess jurisdiction over the matter, the court can then decide if it is appropriate to apply the doctrine of primary jurisdiction." Pac. Lightnet, Inc. v. Time Warner Telecom, Inc., 131 Hawai'i 257, 269, 318 P.3d 97, 109 (2013). A subject matter jurisdiction analysis is required even where the parties do not dispute whether claims are "originally cognizable" in the court. See id. at 272, 318 P.3d at 112 ("The ICA noted that there is no dispute over whether the Feature Group D claims were 'originally cognizable' in the court, and analyzed the case only with respect to whether the court had primary jurisdiction over the matter. However, this court must address subject matter jurisdiction to first determine whether the claims were cognizable in circuit court.")

The County argues that HRS § 386-142 requires it to try to find "alternative employment for those employees permanently unable [] to perform their prior duties," that the RTWP is the "vehicle through which the County satisfies" this mandate, and that the core of Begley's Complaint is a dispute over the County designating Begley as "permanently disabled." The County concludes that Begley cannot seek injunctive or declaratory relief from the Circuit Court to circumvent "the statutory scheme granting sole original jurisdiction over workers' compensation issues, to the DLIR[.]" Begley responds that HRS chapter 386 does not apply because he is not seeking recovery for a "work injury," he is not making a wrongful termination claim under HRS § 386-142, and no effective administrative remedy exists to redress his constitutional challenge to the RTWP.

Hawai'i's Workers' Compensation Law, HRS chapter 386, provides that, subject to exceptions not applicable here, the "rights and remedies" for an employee who suffers a "work injury" granted by that chapter, excludes "all other liability of an employer to an employee . . . on account of an injury[.]" HRS § 386-5 (2015). HRS § 386-73 (2015) provides that the Director "shall have original jurisdiction over all controversies and

8

disputes arising under this chapter."[12]  The supreme court has stated that this section "preclude[s] original court action to settle controversies involving the workers' compensation law," and "relegates the circuit court to a secondary role where workers' compensation is concerned--the enforcement of the Director's decisions."  Travelers Ins. Co. v. Hawaii Roofing, Inc., 64 Haw. 380, 384, 641 P.2d 1333, 1336 (1982); see also HRS § 386-91 (2015);[13] HRS § 386-88 (2015).[14]

Travelers Ins. Co. pertains to a dispute between two workers' compensation insurance carriers, Travelers and Hawaii Roofing.  The Director awarded benefits to the injured employee and ordered Travelers to reimburse Hawaii Roofing for payments Hawaii Roofing had previously made to the employee.  Id. at 382, 641 P.2d at 1335.  The reimbursement order was premised on specific findings, including that Travelers had not served the Director with the a notice of cancellation of insurance coverage, as required by HRS § 386-127.[15]  Id.  Travelers appealed to the

---

[12]     HRS § 386-73 more fully provides:

> **§ 386-73. Original jurisdiction over controversies.** Unless otherwise provided, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter. The decisions of the director shall be enforceable by the circuit court as provided in section 386-91. There shall be a right of appeal from the decisions of the director to the appellate board and thence to the intermediate appellate court, subject to chapter 602, as provided in sections 386-87 and 386-88, but in no case shall an appeal operate as a supersedeas or stay unless the appellate board or the appellate court so orders.

[13]     To summarize, HRS § 386-91 allows the parties or the Director to obtain a judgment from the circuit court enforcing a decision by the Director or the Labor and Industrial Relations Appeals board (LIRAB) assessing penalties or awarding compensation or other relief, if that decision was not appealed or if the decision includes a stay order.

[14]     HRS § 386-88 provides in relevant part:

> **§386-88 Judicial review.** The decision or order of the appellate board shall be final and conclusive, except as provided in section 386-89 . . . . The appeal shall be on the record, and the court shall review the appellate board's decision on matters of law only.

[15]     HRS § 386-127 (2015) pertaining to "Cancellation of insurance contracts" provides that

(continued...)

LIRAB and simultaneously filed a complaint in the circuit court seeking "relief from the Director's orders." Id. at 383, 641 P.2d at 1335. The issue presented to the supreme court was whether the circuit court had jurisdiction under HRS §§ 632-1[16] and 386-73 to issue declaratory relief as to disputes between insurance carriers related to reimbursement of workers' compensation benefits. Id. at 383, 641 P.2d at 1336. Travelers argued, inter alia, that the circuit court had exclusive original jurisdiction to resolve matters "incidental and collateral" to a claimant's entitlement to benefits. Id. at 384, 641 P.2d at 1336. In other words, Traveler's argued, the Director's role was limited to resolving disputes "directly related to benefit claims." Id. The supreme court disagreed and held that HRS

---

[15](...continued)
> No policy or contract of insurance issued by a stock company or mutual association against liability arising under this chapter shall be canceled within the time limited in the contract for its expiration until at least ten days after notice of intention to cancel such contract, on a date specified in the notice, has been filed with and served on the director of labor and industrial relations and the employer.

[16]     HRS § 632-1(b) (2016) provides:

> **§ 632-1. Jurisdiction; controversies subject to.**
>
>      . . . .
>
>      (b) Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, <u>a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed</u>; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

(Emphasis added.)

chapters 386 and 632 deprived the circuit court of the power to decide the dispute. Id. at 384, 641 P.2d at 1336. The supreme court reasoned as follows:

> The instant controversy stems from a purported neglect to serve the Director with notice of an imminent cancellation of a workers' compensation insurance policy. Travelers would have us assume the dispute is only peripherally related to HRS Chapter 386 and its central purpose. But HRS §§ 386-121 through 128 constitute an essential component of an independent statutory system of legal relations designed to shield workers from the consequences of work injuries. S. Riesenfeld, *Study of the Workmen's Compensation Law in Hawaii*, iii (1963) (Legislative Reference Bureau, Report No. 1). For this part of the law ensures the payment of compensation to injured workers. The Director has a duty thereunder of compelling employers who choose insurance as the means of securing compensation payments to their employees to maintain insurance coverage at all times. The notice of cancellation requirement obviously serves a vital function in this regard. A dispute over an alleged failure to comply therewith definitely arises under HRS Chapter 386, is hardly an "equitable" issue, and is of direct concern to the Director in his enforcement of the law.

Id. at 384-85, 641 P.2d at 1336-37. The supreme court stated that HRS § 632-1 "precludes the utilization of declaratory actions in workers' compensation cases." Id. at 386, 641 P.2d at 1337. "Although section 632-1 generally endorses declaratory relief in civil cases, it nonetheless disallows such relief '[w]here . . . a statute provides a special form of remedy for a specific type of case.' The 'independent system of legal relations' established by the Hawaii Workers' Compensation Law thus debars declaratory relief here." Id. (footnote omitted).

In Ras v. Hasegawa, 53 Haw. 640, 640, 500 P.2d 746, 747 (1972), the Director issued an order directing the claimant to submit himself to a medical examination pursuant to HRS § 386-79. The claimant filed suit in the circuit court seeking a preliminary injunction barring the enforcement of the Director's order. Id. The supreme court held that the claimant was not entitled to seek review of the Director's decision under Hawaii's Administrative Procedures Act as HRS §§ 386-73 and 386-88 "remove the circuit court from the appellate process altogether with regard to proceedings brought under HRS ch. 386." Id. at 641, 500 P.2d at 747. The supreme court also held, "[n]or may the appellant properly bring an original action in the circuit court which would bar the operative effect of the director's order.

11

Injunctive relief should not serve to circumvent the pursuit of a timely and statutorily mandated remedy by way of appeal." Id. The court explained, "[A] statute which provides for a thing to be done in a particular manner or by a prescribed person or tribunal implies that it shall not be done otherwise or by a different person or tribunal." Id. (internal quotation marks omitted) (quoting State ex rel. Battle v. Hereford, 133 S.E.2d 86, 90 (W. Va. 1963).

The instant case involves provisions related to Begley's ability to work. "Where a work injury causes total disability not determined to be permanent in character," the employer is required to pay the employee temporary total disability (TTD) benefits. HRS § 386-31 (2015). An employee is "totally disabled for work for that day" if he or she is "unable to complete a regular daily work shift due to a work injury." Id. "Disability" is defined as "loss or impairment of a physical or mental function." HRS § 386-1 (2015). The employer must pay TTD benefits "promptly" and "without waiting for a decision from the director," unless disputed. HRS § 386-31. "Payment of these benefits shall only be terminated upon order of the director or if the employee is able to resume work." Id. "Able to resume work" is broadly defined as "an industrially injured worker's injury has stabilized after a period of recovery and the worker is capable of performing work in an occupation for which the worker has received previous training or for which the worker has demonstrated aptitude." HRS § 386-1 (emphasis added).

"When the employer is of the opinion that temporary total disability benefits should be terminated because the injured employee is able to resume work, the employer shall notify the employee and the director in writing of an intent to terminate the benefits at least two weeks prior to the date when the last payment is to be made." HRS § 386-31(b). The notice must notify the employee of his or her ability to request a hearing before the Director "if the employee disagrees with the employer." Id. HRS § 386-31(b) provides as follows regarding the Director's determination of medical stabilization:

§386-31  Total disability.

.   .   .   .

(b) Temporary total disability.

.   .   .   .

(1)    If the director determines, based upon a review of medical records and reports and other relevant documentary evidence, that an injured employee's medical condition may be stabilized and the employee is <u>unable to return to the employee's regular job</u>, the director shall issue a preliminary decision regarding the employee's entitlement and limitation to benefits and rights under Hawaii's workers' compensation laws.  The preliminary decision shall be sent to the affected employee and the employee's designated representative and the employer and the employer's designated representative and shall state that any party disagreeing with <u>the director's preliminary findings of medical stabilization and work limitations</u> may request a hearing within twenty days of the date of the decision.  The director shall be available to answer any questions during the twenty-day period from the injured employee and affected employer.  <u>If neither party requests a hearing challenging the director's finding the determination shall be deemed accepted and binding upon the parties.  In any case where a hearing is held on the preliminary findings, any person aggrieved by the director's decision and order may appeal under section 386-87.</u>

     A preliminary decision of the director shall inform the injured employee and the employer of the following responsibilities, benefits, and limitations on vocational rehabilitation benefits that are designed to facilitate the injured employee's early return to suitable gainful employment:[17]

(A)    That the injured employee may invoke the employee's rights under section 378-2, 378-32, or 386-142, or all of them, in the event of unlawful discrimination or other unlawful employment practice by the employer; and

---

[17]    "Suitable gainful employment" means

employment or self-employment within the geographical area where the employee resides, which is reasonably attainable and which offers an opportunity to restore the employee's earnings capacity as nearly as possible to that level which the employee was earning at the time of injury and to return the employee to the active labor force as quickly as possible in a cost-effective manner, giving due consideration to the employee's qualifications, interests, incentives, future earnings capacity, and the present and future labor market.

HRS § 386-1.

> (B)    That after termination of temporary total
> disability benefits, an injured employee
> who resumes work may be entitled to
> permanent partial disability benefits,
> which if awarded, shall be paid regardless
> of the earnings or employment status of
> the disabled employee at the time.

(Emphasis added.)  See also HAR §§ 12-10-100 – 104
(administrative procedures for seeking medical stabilization
review).  Although it is incumbent upon the employer to request a
medical stabilization review, HAR § 12-10-72.1 authorizes either
party to request a hearing before the Director "if the parties
are unable to resolve a claim, dispute, or controversy arising
under [HRS chapter 386][.]"  It appears that these proceedings
have not yet occurred in this case.

The following decision by the LIRAB appears to be an
example of an appeal to the LIRAB from a determination by the
Director of medical stabilization in a factually similar case.
See Davis v. County of Maui, Fire Dep't, Case No. AB 2016-283(M),
2017 WL 8181554, at *1 (LIRAB Dec. 18, 2017).  On August 5, 2016,
the Director issued a decision that awarded the claimant, inter
alia, TTD benefits for his April 3, 2014 "mental stress injury."
Id. at *1.  The employer appealed this decision to the LIRAB,
arguing that the claimant was not entitled to TTD benefits after
August 8, 2014.  On appeal, the LIRAB made the following
pertinent findings of fact:

On April 3, 2014, "Claimant sustained a work-related
mental stress injury that stemmed from interactions and conflicts
with a supervisor."  Id. at *2.  Beginning May 9, 2014, the
claimant's doctor "released Claimant to work with the restriction
of no contact with the supervisor who caused him stress and
anxiety at work."  Id.  On January 13, 2015, the doctor
"certified that Claimant could return to work, but she continued
to restrict him from direct contact with the supervisor who
caused him stress and anxiety," and "stated that Claimant should
be off work if Employer cannot accommodate the restriction."  Id.
In a September 15, 2015 chart note, the doctor "determined that
Claimant was stable and rateable and recommended a permanent
partial impairment rating."  Id. at *3.  "Claimant reached
maximum medical improvement by September 15, 2015," and "the

14

environmental work restriction of no contact with a specific supervisor, which was continued by Dr. Mathias beyond the medical stability date of September 15, 2015, became permanent by September 15, 2015." Id. "Employer confirmed that if it was not able to accommodate Claimant's work restriction with this supervisor, Claimant was authorized to leave work." Id. "Claimant worked regular duty, but whenever the supervisor in question was assigned to work with him, he would leave work." Id. The LIRAB found that the claimant met his burden of showing that he "was not able to work, because Employer was unable to accommodate his work restriction" on certain dates. Id. The LIRAB concluded that the claimant was entitled to TTD benefits for the dates in which he was unable to work or left work, because the employer was unable to accommodate his work restriction. Id. at *4. However, the claimant was not entitled to TTD benefits after September 14, 2015, under HRS § 386-31(b) because "TTD benefits are paid for disability that is not permanent in character," and "Claimant's stress condition became stable and rateable, and his work restriction became permanent on September 15, 2015." Id. Therefore, "any disability for work became permanent in character from September 15, 2015." Id.

An employee's ability to work is also implicated by HRS § 386-142 (2015), which affords an employee suffering a work injury with employment rights as follows:

> **§ 386-142. Employment rights of injured employees.** It shall be unlawful for any employer to suspend or discharge any employee solely because the employee suffers any work injury which is compensable under this chapter and which arises out of and in the course of employment with the employer unless it is shown to the satisfaction of the director that the employee will no longer be capable of performing the employee's work as a result of the work injury and that the employer has no other available work which the employee is capable of performing. Any employee who is suspended or discharged because of such work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the suspension or discharge and during the period thereafter until the employee secures new employment. This section shall not apply to the United States or to employers subject to part III of chapter 378.[18]

---

[18] HRS § 386-142 applies to the County. HRS § 378-31 (2015) provides in pertinent part,

(continued...)

The supreme court has held that "[p]ursuant to HRS § 386-73 (1993), the Director has original jurisdiction over HRS § 386-142 claims[.]" <u>Zhang v. State, Dep't of Land & Nat. Res.</u>, SCWC-11-0001106, 2016 WL 4182511, at *14 (Hawaiʻi Aug. 8, 2016) (mem. op.) (footnote omitted).[19] In numerous decisions by the LIRAB, an employee's inability to secure employment after participating in a public employer's return to work program, an employee's refusal to participate in the program, or an employee's refusal to accept an offer for a light duty or alternate position have served as evidence that the public employer did not terminate the employee "solely" because he or she filed a workers' compensation claim. <u>See</u>, <u>e.g.</u>, <u>Cremer v. Dep't of Transp., State of Hawaii</u>, Case No. AB 98-142(K) (4-94-10128), 2000 WL 33765920, at *3 (LIRAB Oct. 25, 2000) (department and state-wide job searches yielded no suitable jobs); <u>Dewitt v. Dep't of Pub. Safety, State of Hawaii</u>, Case No. AB 98-405(H), (1-

_____

[18](...continued)
        As used in this part [(part III of HRS chapter 378)]:

    . . . .

       "Employer" includes any individual, partnership, association, joint-stock company, trust, corporation, the personal representative of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, employing any persons, but shall not include the State or any political subdivision thereof or the United States.

    Thus, HRS § 386-142 does not apply to the United States and private employers as provided in HRS § 378-31, but <u>does</u> apply to State and County employees.

    [19]    In <u>Zhang</u>, the supreme court briefly discussed claim and issue preclusion in the context of HRS § 386-142, but this case is not directly on point. Zhang sued the DLNR for, <i>inter alia</i>, wrongful discharge based on alleged retaliation for filing a grievance in the circuit court. The circuit court found in written findings of fact and conclusions of law that she was terminated based on her employer's belief that Zhang had failed to fill out an immigration form, and not a retaliatory reason. She did not appeal the judgment. <u>Id.</u> at *14. She then brought a HRS § 386-142 claim before the Director years later. <u>Id.</u> at *8. The Director concluded that she was not terminated "solely" due to her workers' compensation claim; the LIRAB affirmed and concluded that whether her workers' compensation claim was the sole reason for her termination was not previously adjudicated by the circuit court. <u>Id.</u> at *9. The supreme court held that the circuit court's finding precluded Zhang from asserting that she was terminated "solely" because of her workers' compensation claim and, in any event, the LIRAB's conclusion was not clearly erroneous. <u>Id.</u> at *13. The supreme court stated "pursuant to HRS § 386-73[], the Director has original jurisdiction over HRS § 386-142 claims, and the Circuit Court did not address the statute," without further explanation. <u>Id.</u>

16

88-06162), 2000 WL 33765933, at *3 (LIRAB Dec. 15, 2000) (claimant "unable to perform her usual and customary job" and "refused to accept available work [(light duty position)] within her physical capabilities."); and <u>Leonida v. Judiciary, State of Hawaii</u>, Case No. AB 92-416 (2-88-26078), 1994 WL 1886392, at *2-3 (LIRAB 1994) (claimant failed to report to work for light duty position).

The County argues that the RTWP is merely the procedural "vehicle" that the County uses to comply with the mandate of HRS § 386-142. Because HRS § 386-142 makes past conduct unlawful, the County is correct that the County must essentially make a judgment call about whether a proposed termination of an employee is likely to be deemed "unlawful" by the Director if challenged. Thus, in order to ensure that it does not suspend or discharge an employee unlawfully under this provision, the County must make a determination about whether "the employee will no longer be capable of performing the employee's work as a result of the work injury," and if so, "that the employer has no other available work which the employee is capable of performing."

Both Count I and parts 1-3 of Count 2 concern the County's use of the RTWP to determine whether Begley's ability to work, that is to say, whether he is permanently disabled. Based on the foregoing, the Director has exclusive, original jurisdiction over this matter.

Likewise, in parts 4-6 of Count II, Begley argues that (1) the RTWP was unconstitutionally adopted; (2) it provides inadequate due process; and (3) the County violated his due process rights when it forced him to participate in the RTWP. As we have observed, HRS § 386-73 provides that the Director "shall have original jurisdiction over all controversies and disputes arising under this chapter." As the RTWP is the process County uses to determine whether and under what conditions Begley may return to his position, a dispute over the validity of County's reinstatement-after-injury-process is a dispute arising under chapter 386 and must be brought, in the first instance, before the Director.

17

### B.   The Circuit Court Abused Its Discretion By Dismissing Counts IV, V, VI, and VII.

Begley grounds Counts IV, V, VI, and VII in tort and bases them upon the County's action of "forcing [him] to participate in the RTWP with the goal of terminating him in retaliation for reporting improper conduct at the [KPD]." Tort claims are matters over which the circuit court has jurisdiction. HRS §§ 603-21.5(3) (2016) and 663-1 (2016).[20] However, these alleged torts depend in part on whether the procedures used by the County in determining whether and under what circumstances Begley may return to his previously held position were proper, a matter that, as we have said, is within the exclusive and original jurisdiction of the Director. Thus, the Circuit Court was correct in ruling it had primary jurisdiction over these claims. Kellberg, 131 Hawai'i at 527, 319 P.3d at 446 ("the doctrine of primary jurisdiction 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'").

However, because Counts IV through VI are based on the illegitimacy of a process (the RTWP) that determines whether an employee is ratable/eligible to return to work and what work he is eligible for is something within the expertise of the Director. Therefore, validity of the RTWP is an issue over which the Director should have the first opportunity for review. See, United Public Workers v. Abercrombie, 133 Hawai'i 188, 202, 325 P.3d 600, 614 (2014).

---

[20]   HRS § 603-21.5(a)(3) provides: "The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute of . . .Civil actions and proceedings. . . [.]" HRS § 663-1 provides,

> **Torts, who may sue and for what.** Except as otherwise provided, all persons residing or being in the State shall be personally responsible in damages, for trespass or injury, whether direct or consequential, to the person or property of others, or to their spouses or reciprocal beneficiaries, children under majority, or wards, by such offending party, or the offending party's child under majority, or by the offending party's command, or by the offending party's animals, domestic or wild; and the party aggrieved may prosecute therefor in the proper courts.

In Abercrombie, the supreme court considered whether layoffs were imposed as retaliation for the Union's lawsuit challenging furloughs. The United Public Workers (UPW) filed a complaint with the Hawai'i Labor Relations Board (HLRB) alleging prohibited practices, and a complaint in the circuit court alleging violations of the Hawaii Whistleblowers' Protection Act and the Free Speech Clause. The supreme court held that, so long as the agency and the court had "concurrent jurisdiction over issues presented in the claims," the doctrine of primary jurisdiction applied. The supreme court discussed whether the case should have been stayed rather than dismissed, stating:

> In the instant case, the ICA concluded that UPW's First Circuit Complaint alleged that Defendants had essentially engaged in prohibited practices by implementing the layoffs and privatization, but that UPW's statutory claims could be raised directly in the circuit court. The ICA held, therefore, that pursuant to the primary jurisdiction doctrine, a stay rather than a dismissal of UPW's claims was appropriate because the statute of limitations could prevent UPW from refiling its claims at the conclusion of the HLRB's proceedings. As to UPW's retaliation claims, we agree.

Id. at 203, 325 P.3d at 615.

In Jou, the doctor sued in circuit court for, inter alia, insurer bad faith for failure to pay him for therapeutic massage services although he was not licensed. The circuit court dismissed the suit based on failure to exhaust because it ruled Jou was required to obtain a ruling from the agency on whether he was entitled to payment before bringing an action for bad faith. Jou appealed, challenging both the circuit court's ruling that he failed to exhaust, claiming he was entitled to sue in tort for insurer bad faith because, as a matter of law, he was an intended third-party beneficiary of his patient's employer's workers' compensation insurance policy. We held that the circuit court was wrong, and that it should have applied the doctrine of primary jurisdiction. With regard to the appropriate disposition of a case where primary jurisdiction applied, we observed,

> [a] trial court has discretion in fashioning an appropriate remedy when applying the primary jurisdiction doctrine. As an alternative to staying the proceedings pending administrative resolution of predicate issues, the court has the discretion to dismiss the case without prejudice. Reiter, 507 U.S. at 268-69, 113 S.Ct. 1213. However, dismissal is an appropriate remedy only "if the parties would not be unfairly disadvantaged." Id. at 268,

113 S.Ct. 1213. In Dr. Jou's case, the circuit court did not consider whether Dr. Jou would be unfairly disadvantaged by the dismissal because it held, incorrectly, that dismissal was required on jurisdictional grounds for failure to exhaust administrative remedies.

Jou, 114 Hawai'i at 129, 157 P.3d at 568 (affirming the dismissal on other grounds, *inter alia*, that Jou was not an intended third party beneficiary of the insurance contract).

Likewise, the Circuit Court here abused its discretion by dismissing Counts IV through VII without considering whether the dismissal would "unfairly disadvantage" Begley in bringing his claims. Therefore, on remand, the Circuit Court should consider whether Counts IV through VI should be dismissed or stayed under Abercrombie.

**IV.**

For the foregoing reasons, we vacate the February 18, 2016 Final Judgment Against Plaintiff entered by the Circuit Court of the Fifth Circuit and remand for proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, November 30, 2018.

On the briefs:

Lyle S. Hosoda
Kevin T. Morikone
(Hosoda & Morikone),
for Plaintiff-Appellant/
Cross-Appellee.

Presiding Judge

Adam P. Roversi,
Office of the County Attorney,
for Defendant-Appellee/
Cross-Appellant.

Associate Judge

Associate Judge